# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE CO., <br><br> Plaintiff, <br><br> vs. <br><br> MERCURY PLASTICS, <br><br> Defendant. | 2:13-cv-01763-RCJ-PAL <br><br> **ORDER** |

This subrogation action arises out of damage caused to a residence and its contents when a water supply line failed. Pending before the court are two motions for summary judgment, two motions in limine, and a motion for spoliation sanctions.

## I.    FACTS AND PROCEDURAL HISTORY

Defendant Mercury Plastics, Inc. ("Mercury") designed, manufactured, marketed, and sold a plastic water supply line (the "Line") installed in a house owned by non-party Zarzand Galstain (the Insured") and located in Clark County, Nevada. (*See* Compl. ¶¶ 3, 7, ECF No. 1-2, at 6). On or before June 20, 2012, the Line broke while the Insured was out of town, permitting water to leak into the house, which in turn caused substantial damage to the Insured's real and personal property. (*Id.* ¶ 8). The Insured submitted insurance claims to Plaintiff Allstate Property & Casualty Insurance Co. ("Allstate"), who paid over $800,000 on the claim. (*Id.* ¶¶ 10–11).

Allstate sued Mercury in Nevada state court under theories of strict liability and negligence on August 21, 2013. (*See id.* 1). Two days later, Mercury sued Allstate in Ohio state

court (the "Ohio Case") for a declaration that Allstate was not subrogated to any potential claims by the Insured, and that the Line was not defective, in any case. (*See* Ohio Compl. ¶¶ 16–19, ECF No. 15-1, at 2). Allstate removed the Ohio Case on September 20, 2013. (*See* Notice Removal, ECF No. 1 in Case No. 1:13-cv-2097, N. D. Ohio). Mercury removed the present case six days later. (*See* Pet. Removal, ECF No. 1). Mercury asked the Court to stay the present case or transfer it to the Northern District of Ohio. The Court denied that motion because Allstate had not engaged in claim-splitting, because Allstate had in fact filed its case in state court in Nevada before Mercury filed its case in state court in Ohio, such that the first-to-file rule, if applied, would inure to the benefit of Allstate, and because none of the factors under 28 U.S.C. § 1404(a) favored transfer.

Allstate has asked the Court to grant it partial summary judgment as to damages, but not as to liability. Mercury has asked the Court to grant it summary judgment against all claims. Mercury has also filed two motions in limine and a motion for spoliation sanctions.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the

initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### B. Motions in Limine

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence.  Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial.  Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1171 (10th ed. 2014).  Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008).  To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).  This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are preliminary and therefore "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

### C. Discovery Sanctions

Rule 37 permits a court to impose sanctions against a party or the party's attorney for discovery violations. Sanctions may imposed if a party fails to comply with a discovery order, Fed. R. Civ. P. 37(b)(2)(A), or if a party "fails to provide information or to identify a witness as required by Rule 26(a) or (c)," Fed. R. Civ. P. 37(c)(1). In the latter case, the culpable party "is not allowed to use" the undisclosed information or witness as evidence, unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Additionally, a court has the discretion after a motion and hearing to: (1) order payment of reasonable expenses, including attorney's fees, caused by the failure; (2) inform the jury of the failure; and (3) impose other appropriate sanctions, including any of those listed in Rule 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37(c)(1)(A)-(C). The potential sanctions listed in Rule 37(b)(2)(A)(i)-(vi) include: (1) directing that the matters encompassed by the discovery failures be taken as established; (2) prohibiting the culpable party from supporting or opposing relevant claims or defenses; (3) striking pleadings; (4) staying proceedings until compliance; (5) dismissing the action in whole or in part; or (6) rendering a default judgment against the culpable party. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

## III. ANALYSIS

### A. Motions for Summary Judgment

The Court first notes that Allstate has sued Mercury for "strict products liability" and

"negligent products liability," with no separate claim for equitable subrogation.  Perhaps Allstate means to imply that it is contractually subrogated to the Insured's claims against Mercury when it pleads in the general allegations that "[p]ursuant to its policy of insurance, law, and equity, and to the extent of its payments to and on behalf of [the Insured] related to the loss, Allstate is subrogated to all rights of [the Insured] . . . ."  But even in the absence of a subrogation clause, Allstate would be subrogated to the Insured's claims against Mercury by operation of law. *Valley Power Co. v. Toiyabe Supply Co.*, 396 P.2d 137, 138 (Nev. 1964) (citing *Gardner v. Walker*, 373 P.2d 598 (Wyo. 1962); *Milwaukee Ins. Co. v. McLean Trucking Co.*, 125 S.E.2d 25 (N.C. 1962); *Talley v. Fawcett*, 355 P.2d 302 (Colo. 1960)) ("Having paid the assureds in full for their claimed losses, the insurer was subrogated, by operation of law, to the rights, if any, which the assureds may have had against the defendants before such payments were made.").

In other words, assuming a theory of equitable subrogation, Allstate's recovery will be defined by the amount to which Mercury would have been liable to the Insured had the Insured sued Mercury.  If Allstate has paid the Insured an amount greater than the amount of damages it can prove Mercury caused the Insured, Allstate will not be entitled to recover the difference from Mercury.  Any payment to the Insured beyond the actual damages caused by Mercury is a matter of contract between Allstate and the Insured.  Conversely, if the damages Mercury caused the Insured exceed the amount Allstate has paid the Insured, Allstate's recovery against Mercury under a theory of equitable subrogation will be limited to the amount it actually paid the Insured, because "equity will not allow the subrogee's claim to be placed ahead of the subrogor's." *See Allstate ins. Co. v. Clarke*, 527 A.2d 1021, 1024 (Pa. Super. 1987).  The same limitation would not apply if Allstate has been assigned the Insured's claim by contract, i.e., contractual subrogation.  The Complaint does not make clear whether there is any contractual subrogation clause in Allstate's policy with the Insured.

///

### 1. Mercury's Motion

Mercury asks the Court to grant it summary judgment because there are alternative potential sources of the pipe's failure that Allstate's expert, Dr. Kumar, does not address in his report, specifically, excessive heat and pressure due to the homeowner's failure to properly maintain the hot water heater. But a jury could find that both improper heater maintenance and a defective pipe were legal causes of the failure, even assuming it found that the water heater was not properly maintained. For example, it could be the case that the pipe was negligently designed or unreasonably dangerous because it was not designed to withstand the kind of pressures and temperatures that might result from a homeowner's foreseeable failure to maintain his hot water heater. These are issues for the jury.

### 2. Allstate's Motion

Allstate asks the Court to rule that there is no genuine issue of material fact that its damages, i.e., the amount it has paid to the Insured, is $832,705.90. Allstate has submitted the affidavit of its employee, Alexandra Wolak, who has attested to itemized payments to the Insured totaling $832,705.90 for lodging, sustenance, pack-out, dry-out, repairs, property damage, property cleaning, and damage appraisal. (*See* Wolak Aff., July 7, 2014, ECF No. 1-1). Allstate has adduced additional detailed documentary evidence of the payments and explanations thereof, (*see* Mot. Partial Summ. J. Exs. 2–3, ECF Nos. 32-2 to 32-6), although Ms. Wolak's testimony would be sufficient to sustain a directed verdict if uncontroverted at trial.

In response, Mercury argues that Allstate cannot prove its damages by simply proving its payments to the Insured, because payments to the Insured do not prove the Insured's actual damages, which is what Allstate must prove under a subrogation theory, whether it is equitably subrogated to the Insured's claims or had the Insured's claims contractually assigned to it. The Court agrees. In this subrogation action, Allstate must prove the damages caused to the Insured directly, not only that it has made payments to the Insured based on the Insured's claims to

Allstate.  The exhibits adduced by Allstate are not authenticated by the Insured or anyone else as representing the damage caused by the leak.  Also, as noted, *infra*, the expert evidence of the valuation of the rugs (which constitutes the majority of the claim) will be excluded.

### B.     Motions in Limine

In Motion No. 33, Defendant asks the Court to exclude evidence of damages as to the value of the Insured's Persian rugs and to exclude Sarkis Tabakian as an expert witness based on Allstate's failure to disclose Tabakian as an expert witness or his expert report until May 14, 2014, almost two years after the expert report was prepared and after having long identified him as a fact witness, such that Mercury was unable to procure a rebuttal expert witness as to the valuation of the rugs before the deadline to do so.  In any case, the rugs have been sold, so Mercury cannot now obtain a rebuttal witness to examine them.  The expert disclosure deadline was March 3, 2014, and Allstate never identified an expert as to the valuation of the rugs until it identified Tabakian as an expert on this matter on May 14, 2014, having previously identified him as a fact witness.

In response, Allstate argues that "[w]hile not perfectly labeling Mr. Tabakian as a non-retained expert witness, Allstate made clear that it would be calling Mr. Tabakian to testify regarding his appraisal of the rugs damaged."  But Allstate itself reproduces its first disclosure of Mr. Tabakian to Mercury on March 3, 2014, stating, "Mr. Tabakian is a fact witness with experience in rug appraisal. . . . He will further testify as to the appraisal that he did of the rugs and that his appraisal was based on the age and rarity of the rugs."  That disclosure was ambiguous, indicating that Tabakian is a fact witness but implying that he is an expert witness.  Allstate argues that Mercury refused to stipulate to reopen discovery to get another expert to evaluate the rug "documentation," but as Mercury notes, appraisal of a rug requires access to the rug itself.  It is disingenuous for Allstate to maintain that Mercury has refused an opportunity to have its own expert examine the rugs.  Mercury has had only the opportunity to have its own

expert examine *documents prepared by Tabakian concerning Tabakian's evaluation of the rugs*. That is not the same as having one's own expert examine the rugs directly. Ultimately, Allstate argues that the appraisal is relevant and admissible as an exception to the hearsay rule as a business record. Fair enough, but the bigger issue is whether it constitutes an expert report that was not timely disclosed. The Court finds that it is. The Court therefore excludes Tabakian as an expert under Rule 37(c)(1). Tabakian may testify as a fact witness, the Insured may testify as to how much he paid for the rugs, and Allstate's representative may testify as to how much Allstate reimbursed the Insured for the rugs. But Tabakian may not testify as an expert witness.

In Motion No. 34, Defendant asks the Court to exclude the testimony of Nicholas Corbo, Allstate's mechanical engineering expert. Ultimately, Mercury complains that Corbo's test was improper because it was not done at the loss location, but at a separate facility, and after the hot water heater had been flushed of sediment, the pressure relief valve opened, and in an open atmosphere, rather than a closed system. The Court denies this motion. Corbo has opined that these differences do not matter. If Mercury disagrees, it may cross-examine Corbo on these issues or offer its own rebuttal expert. Mercury also attacks Corbo's credentials because his professional experience has been concentrated in areas other than plumbing, but the Court is satisfied with his credentials and will not exclude him as an expert at this time.

C.  **Motion for Spoliation Sanctions**

Defendants asks the Court to dismiss the case, grant it a rebuttable presumption, or give the jury an adverse inference instruction based on Allstate's alleged spoliation of the hot water heater (which Mercury believes may have been the ultimate cause of the leak) and the Persian rugs. The Court denies the motion.

First, Mercury does not allege that the hot water heater has been destroyed or even damaged in any way relevant to testing. Mercury only alleges that Allstate removed it from the home and tested it in California under conditions different from those at the home. Mercury does

not allege that it had no opportunity to test the hot water heater itself using tests it believed more appropriate or under conditions (such as with added sediment) it believed better reflected the conditions under which the pipe failure occurred in the Insured's home.

    Second, the Court will not sanction Allstate for failing to attempt to prevent the Insured's sale of the rugs beyond the sanction it has already imposed, i.e., that Tabakian may not give expert testimony. Even if negligent, there is no evidence Allstate intentionally permitted the rugs to be lost.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment (ECF No. 32) is DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 35) is DENIED.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 33) is GRANTED IN PART.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 34) is DENIED.

IT IS FURTHER ORDERED that the Motion for Spoliation Sanctions (ECF No. 36) is DENIED.

IT IS SO ORDERED.

Dated: September 12, 2014.

_____
ROBERT C. JONES
United States District Judge